HENRY HANGSLEBEN *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. RECOGNIZANCE—*setting aside forfeiture.* Where a defendant voluntarily absented himself from the court room to make preparations for procuring the attendance of a witness in his behalf, and while so absent a forfeiture of his recognizance was taken, and the cause continued, and his affidavit made at the next term to set aside the forfeiture did not show there was a necessity for his absence, and no steps were taken to have the order set aside at the term it was entered, it was *held,* that the court properly refused to set aside the forfeiture at a succeeding term, and this though the principal cognizor was subsequently, upon trial, acquitted of the criminal charge.

2. SAME—*right of sureties to surrender principal in discharge.* Under the present statute, the sureties in a recognizance may be discharged, upon payment of costs, on surrendering their principal at any time before default upon the bond or recognizance. The surrender must be made before judgment of forfeiture is entered, except it is prevented by the act of God.

3. So, on *scire facias* upon a recognizance, a plea that the sureties in the recognizance surrendered their principal after the forfeiture thereof, and before the issuing of the *scire facias* thereon, is bad on demurrer.

4. EVIDENCE—*judicial notice.* A court will take judicial notice of its own records, without proof that they are such.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. J. B. HAY, for the plaintiffs in error.

Mr. JAMES K. EDSALL, Attorney General, and Mr. GEORGE W. BROCKHAUS, for the People.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

At the September term, 1874, of the St. Clair circuit court, an indictment for murder was returned into court against Henry Hangsleben, one of the plaintiffs in error, and Allen Long.

At the same term of court, Hangsleben, together with the

other plaintiffs in error as his sureties, entered into a recognizance for his appearance in court to answer said indictment, etc.

At the January term, 1875, of the circuit court, on the 18th day of January, 1875, the day the cause was set for trial, the said Hangsleben made default in his appearance, and a forfeiture of the recognizance was taken, and a writ of *scire facias* ordered against the principal and sureties, returnable to the next April term, 1875. The record shows that the writ was returned served March 23, 1875; that at the September term, 1875, a demurrer was sustained to the second plea to the *scire facias;* that on October 6, 1875, amended pleas were filed; that on January 7, 1876, a demurrer was filed to the second amended plea, and, also, that at the same January term a motion was entered to set aside the forfeiture of the recognizance; that at the April term, 1876, the court denied said motion, sustained a demurrer to the second plea as amended, and found the issue for the people on the first plea of *nul tiel record,* on which issue had been joined, and awarded execution, etc. The defendants bring this writ of error.

The errors assigned are, in overruling the motion to set aside the forfeiture of the recognizance, and in sustaining the demurrer to the second plea.

There were counter affidavits introduced by the people in opposition to the motion to set aside the forfeiture of the recognizance, but as in *Wray* v. *The People,* 70 Ill. 664, this court held such affidavits inadmissible, we shall not consider them, but only the affidavits on the part of the defendant Hangsleben, whether they showed sufficient reason to require the court to grant the motion. The statute upon the subject of setting aside such a forfeiture, after making provision for the issuing of a *scire facias* upon a forfeited recognizance, the service of the writ, and the recovery of judgment thereon, concludes as follows: "Before judgment, the court may, in its discretion, set aside such forfeiture upon the accused being brought or coming into open court, and showing to the court, by affidavit, that he was unable to appear in court according

to the terms of the recognizance, by reason of sickness or some other cause, which shall satisfy the court that the accused had not been guilty of any *laches* or negligence: *Provided,* that no such forfeiture of a recognizance shall be set aside until the accused shall pay the costs of such recognizance."

The excuse for the absence of Hangsleben when the forfeiture was taken is stated in his own affidavit thus:

After showing his desire to procure the attendance of one Woodson as a witness, "affiant further states that he had employed his sister, who had great influence over, and was well acquainted with, said Woodson, to go down and bring said Woodson as aforesaid as a witness on the trial of the indictment.

"Affiant further states that he had his sister ready in the city, and she was willing to go and bring said Woodson; and that while affiant was making such a preparation to procure the attendance of said Woodson, the forfeiture of the recognizance was taken.

"Affiant further states that, after said forfeiture was taken as aforesaid, his attorneys informed affiant that said forfeiture could be set aside by the court, upon payment of all costs, and that affiant must be present at the then next term of court, —April term, 1875,—ready for trial on the indictment."

The affidavit of the sister of the defendant, introduced by him, among other things, states, "that between the hours of ten and eleven A. M. of said day, (the day the forfeiture was taken,) said Henry Hangsleben came to the place where affiant was waiting, and informed her that said Woodson had failed to appear in court, and that the affiant must go right away and bring him; that affiant prepared herself to start, and in a few minutes said Henry Hangsleben came back to where affiant was, and informed her that she need not go—that the case had been called in his absence, and continued."

Obviously, the affidavits fail to show that the defendant was " unable to appear in court according to the terms of the recognizance;" but that while present in the city of Belle-

ville, where the court was in session, he voluntarily absented himself from the court, making preparations to procure the attendance of Woodson as a witness. Even for the purpose of making such preparation, it is not disclosed that there was a necessity for the absence of the defendant from the court room.

To admit such an excuse, would open an easy and safe way for a defendant under recognizance, by absenting himself, to secure the continuance of his case, whenever it might not suit his wish that it should be brought to trial. If the defendant had appeared after the forfeiture, on the day or at the term it was declared, the trial might have been proceeded with.

If the accused was acting in good faith, and the forfeiture of the recognizance was taken while he was temporarily absent from the court room, why did he not appear in court on the same day, or at the same term, and inform the court of the facts, and ask to have the forfeiture set aside? A course of this kind would have aided the application in question in the respect of being meritorious. A continuance was secured by remaining absent.

In view of the facts as they appear from the affidavits submitted by the defendant, it can not be said that he was free from *laches*, or negligence, in not being present in court when the forfeiture was taken.

On the hearing of the motion, it was admitted that the accused did answer to the indictment at a subsequent term,— January term, 1876,—and was tried and acquitted; and this is urged as a reason why the forfeiture of the recognizance should have been set aside. The subsequent appearance and trial does not necessarily answer all the purpose of having a trial at the term the recognizance was forfeited, and obviate the prejudice to the people there may have been in the delay of a trial until the January term, 1876. The acquittal at that term may have been secured by reason of the absence of witnesses for the prosecution, who were present at the term when the case was first set for trial and the recognizance forfeited.

The motion to set aside the forfeiture was properly denied upon the affidavits filed in support of the motion, and the defendant can not be held as having sustained any injury in point of law, by reason of the presentation of the counter affidavits.

The second plea, to which the demurrer was sustained, sets up that the sureties in the recognizance surrendered their principal "after the said forfeiture of said recognizance, and before the issuing of the *scire facias*" thereon.

The former statute authorized the sureties to seize and surrender their principal at any time before judgment was rendered upon *scire facias* on the forfeited recognizance, providing that upon such surrender the sheriff should take the person surrendered into custody, and thereupon the sureties should be discharged from the recognizance, upon payment of all costs occasioned thereby.   Rev. Stat. 1845, p. 187, § 196.

The statute now in force, regulating the same subject, provides as follows:   In all cases of bail for the appearance of any person charged with a criminal offense, his sureties, or any of them, may, at any time before default upon the bond or recognizance, surrender the principal in their exoneration, or the principal may surrender himself to the proper officer; it providing that the officer shall take the person so surrendered into custody, and thereupon the sureties shall be discharged from such recognizance, upon payment of all costs occasioned by any proceedings upon the recognizance.   Rev. Stat. 1874, p. 397, §§ 304, 308.

It will thus be seen that there has been a marked change in the statute upon the subject of surrender, the former statute authorizing the sureties to surrender their principal "at any time before judgment is rendered upon *scire facias;*" the present statute, "at any time before default upon the bond or recognizance."

Plaintiff's counsel make their point upon the meaning of the word "default," as here used, and contend that the reasonable construction is, that after suit is brought upon the

bond or recognizance against the sureties, and they make default therein, their liability becomes fixed upon entering such default, and not before.

This is a construction convenient for the purpose of the defendants, but really does not seem to be one warranted by the language of the statute. The language is not that the surrender may be at any time before default in the *suit* upon the bond or recognizance, but at any time before default *upon the bond or recognizance.* We do not well see how this can be read otherwise than as default upon the bond or recognizance, default in performance of the condition of the recognizance, or the formal declaration of such default, constituting the forfeiture of the recognizance.

The proper course on default in performance of the condition of a recognizance, is to enter a judgment declaring the same forfeited. *People* v. *Witt,* 19 Ill. 169.

As favoring the construction contended for, reference is made to the closing words of § 308, cited above, that the sureties shall be discharged upon payment of all costs occasioned by any proceedings upon the recognizance, it being said there are no costs to which this language can have application, until after suit shall have been brought upon the forfeited recognizance. Section 306 of this act of 1874 provides that the sureties may require the sheriff, coroner or any constable of the county where the principal may be found, to make his arrest within his county, upon tender to such officer of like fees as are allowed for executing *capias* in criminal cases. Perhaps these fees may satisfy the words mentioned, respecting costs. But whether so or not, we can not attach such force to these words as to allow them to change the plain meaning of the language of default *upon the recognizance,* to default in a *suit* brought upon the recognizance.

There is a provision in § 312, that if, by the act of God, bail are unable, without their fault, to surrender their principal, they shall, on motion, before final judgment on *scire facias,* be exonerated and discharged by the court, with or without

costs, as the court deem equitable. But this, although referred to, we do not see has any application to the case.

Before, the sureties might surrender their principal in discharge of their liability at any time before final judgment on the *scire facias.* Now, except where the surrender is prevented by the act of God, the sureties must make the surrender before " default upon the bond or recognizance," as provided in section 304, Rev. Stat. 1874, p. 397, or else procure the forfeiture to be set aside under section 310, id., where the circumstances under which the forfeiture was taken will justify such proceeding. The change in the statute was made, doubtless, to cure an obvious defect in the former law, which enabled a party under recognizance to evade trial at any time, for whatever cause it might be desirable to do so, and then avoid the liability of the sureties upon his recognizance, by his surrender at any time before final judgment on the *scire facias* issued thereon. We are of opinion the demurrer was properly sustained to the second plea.

There is nothing in the objection taken that no proof was made that the records introduced in evidence on the trial of the issue under the plea of *nul tiel record* were the records of the court. They were the court's own records, of which the court will take judicial notice.

The judgment is affirmed.

*Judgment affirmed.*